# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE SPRING LEAGUE, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. N24C-01-095 EMD CCLD |
| v. | ) ) | |
| FROST BROWN TODD LLP, a Delaware partnership, | ) ) ) | |
| Defendant. | ) | |

Submitted: August 8, 2024
Decided: October 8, 2024

*Upon Consideration of Defendant Frost Brown Todd LLP's Motion to Dismiss*
**GRANTED.**

Patrick C. Gallagher, Esquire, Courtney R. Prinski, Esquire, Jacobs & Crumplar, P.A., New Castle, Delaware. *Attorneys for Plaintiff The Spring League, LLC*.

David E. Ross, Esquire, Eric D. Selden, Esquire, Ross Aronstam & Moritz LLP, Wilmington, Delaware. *Attorneys for Defendant Frost Brown Todd LLP.*

**Davis, J.**

## I.      INTRODUCTION

This is a legal malpractice action assigned to the Complex Commercial Litigation Division.  Plaintiff The Spring League, LLC ("The Spring League")[1] filed the civil action in this Court on January 14, 2024.  The Spring League asserts a legal malpractice claim against Frost Brown Todd LLP ("Frost Brown").  Presently before the Court is Frost Brown's Motion to

---

[1] The parties use different names when addressing The Spring League.  *Compare* D.I. No. 1 *with* D.I. No. 14.  For example, the Complaint identifies the plaintiff as The Spring League, LLC.  *See* D.I. No. 1.  The Spring League in its response to the motion to dismiss provides that The Spring League is "Spring League" in the caption and "The Spring League, a Delaware limited liability company" in the body of the response.  *See* D.I. No. 14. The Court will use the name provided in the Complaint and the Complaint's caption.

Dismiss The Spring League's Complaint (the "Motion to Dismiss").[2] The Court held a hearing on August 8, 2024.[3] At the conclusion of the hearing, the Court took the Motion to Dismiss under advisement.[4]

For the reasons set forth below, the Motion to Dismiss is **GRANTED.**

## II. BACKGROUND

The Spring League is an American football developmental league, and Delaware limited liability company.[5] Frost Brown is a Delaware partnership and law firm.[6] The Spring League retained Frost Brown as its counsel.[7]

In August 2020, Frost Brown reviewed and negotiated the terms of a Television Rights Agreement (the "TV Agreement") between The Spring League and Fox Sports 1, LLC ("Fox Sports").[8] The TV Agreement related to the relaunch of the United States Football League ("USFL").[9]

The TV Agreement required The Spring League to carry intellectual property insurance.[10] The Spring League alleges that Frost Brown represented that it would "handle everything" regarding the need to obtain this type of insurance.[11] Frost Brown communicated with brokers, sent and filled out applications for insurance to The Spring League, and "represented that the Spring League could rely on [Frost Brown] to coordinate every aspect of the insurance."[12]

---

[2] D.I. No. 4.
[3] D.I. No. 19.
[4] *Id.*
[5] Complaint ("Compl.") ¶¶ 2, 6.
[6] *Id.* ¶ 9.
[7] *Id.* ¶ 12.
[8] *Id.*
[9] *Id.* ¶ 1.
[10] *Id.* ¶¶ 1, 15.
[11] *Id.* ¶ 16.
[12] *Id.* ¶ 17.

The Spring League purchased insurance from Certain Underwriters at Lloyd's, London (the "Insurer").[13] The insurance coverage extended to claims of intellectual property rights infringement for which the Insurer was notified during the policy period (the "Policy").[14] The parties agree that the coverage period for the Policy began on October 26, 2020, but dispute its end date. Frost Brown claims the Policy ended on June 28, 2021.[15] The Spring League says it ended on October 27, 2021.[16]

The Spring League, even though it signed the Policy,[17] claims it was not aware of the Policy's notice and premium requirements.[18] The Spring League attributes the ignorance of these terms to Frost Brown's alleged failure to ever "discuss[] or advise[] The Spring League" of them.[19] The Spring League also makes the conclusory assertion that "[Frost Brown] remained entirely in control with respect to every aspect of insurance per the [TV Agreement]."[20]

The Spring League maintains that Frost Brown failed to adequately investigate the ownership of the marks the Spring League sought to use.[21] On August 29, 2020, The Spring League asked Frost Brown to seek trademark protection for the logo of The Spring League.[22] Two days later, a Frost Brown partner told another partner that "I assume the client doesn't want us to run a trademark clearance search prior to filing the application, based on our call and given that it is already using the mark, but let me know if that's wrong."[23]

---

[13] *Id.* ¶ 20.
[14] *Id.*
[15] Defendant's Opening Brief in Support of Its Motion to Dismiss Plaintiff's Complaint ("MTD") (D.I. No. 4) at 8.
[16] Compl. ¶ 3.
[17] *Id.* ¶ 17.
[18] *Id.* ¶ 21.
[19] *Id.*
[20] *Id.*
[21] *Id.* ¶ 40.b.
[22] *Id.* ¶ 14.
[23] *Id.*

Less than one year later, Fox publicly announced the launch of the new USFL league in partnership with The Spring League on June 3, 2021.[24] The same day, the Philadelphia Inquirer ran a story (the "Inquirer Story") reporting that an executive in the former USFL questioned whether the trademark rights "[came] from any legitimate source."[25] Following its release, Frost Brown conducted an investigation.[26] The Spring League alleges that Frost Brown never advised it of the need to notify the Insurer of this development, which The Spring League contends was a "Claim" under the Policy.[27] Frost Brown does not dispute that it represented The Spring League over the next several months.[28]

On August 20, 2021, The Spring League received a letter from counsel of purported executives of the former USFL regarding "Trademark Infringement/Misappropriation of Rights/Consumer Confusion" (the "August 2021 Letter").[29] Neither The Spring League itself, nor its counsel, notified the Insurer of the August 2021 Letter.[30]

On February 28, 2022, a complaint was filed against The Spring League based on trademark infringement concerns (the "Trademark Suit").[31] The Spring League hired new counsel to assist in the Trademark Suit.[32] The Spring League then sent notice to the Insurer of that litigation.[33] The Insurer denied The Spring League's request for insurance coverage as

---

[24] *Id.* ¶ 22.
[25] *Id.* ¶ 23.
[26] *Id.* ¶ 25.
[27] *Id.* ¶ 26.
[28] MTD at 6.
[29] *Id.* ¶ 29.
[30] *Id.* ¶ 32.
[31] *Id.* ¶ 33.
[32] *Id.*
[33] *Id.*

4

untimely.[34]  The Trademark Suit plaintiffs settled with The Spring League, which allegedly incurred legal fees of over $220,000.[35]

On January 4, 2024, The Spring League filed a single-count complaint (the "Complaint") against Frost Brown for legal malpractice.[36]  Frost Brown filed Defendant's Opening Brief in Support of Its Motion to Dismiss Plaintiff's Complaint on March 28, 2024.[37]  The Spring League filed Plaintiff's Answering Brief in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint (the "Opposition") on April 26, 2024.[38]  On May 17, 2024, Frost Brown filed Defendant's Reply Brief in Further Support of its Motion to Dismiss Plaintiff's Complaint.[39]  The Court heard oral argument on August 8, 2024.

### III.    STANDARD OF REVIEW

Frost Brown moves to dismiss the complaint under Superior Court Rule 12(b)(6) for failure to state a claim, and Rule 9(b)'s particularity standard.

Delaware is a notice pleading jurisdiction.  Plaintiff must "only give the defendant fair notice of a claim and is to be liberally construed."[40]  When considering a motion under Rule 12(b)(6), the court (i) accepts as true all well-pleaded factual allegations in the complaint, (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all reasonable inferences in favor of the plaintiff.[41]  The motion to dismiss will be denied "unless the plaintiff would not be entitled to recover under any reasonably conceivable set of

---

[34] *Id.* ¶ 34.
[35] *Id.* ¶¶ 35-36.
[36] D.I. No. 1.
[37] D.I. No. 4.
[38] ("Opp.") (D.I. No. 14).
[39] ("Reply") (D.I. No. 15).
[40] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003).
[41] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC,* 27 A.3d 531, 535 (Del. 2011).

circumstances."[42]  Damages may be pled generally.[43]  Nonetheless, Delaware's minimal notice pleading standard does not excuse a party's requirement to allege facts raising a reasonable inference that damages are causally related to the alleged misconduct.[44]

Rule 9(b) further requires that averments of fraud, negligence, or the circumstances constituting fraud or negligence, be stated with particularity.[45]

## IV.    DISCUSSION

The elements of a legal malpractice action are (1) the existence of an attorney/client relationship; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that the negligence of the lawyer was the proximate cause of damage to the client.[46]

The Spring League Complaint fails to meet the pleading standards of the Civil Rules. The Spring League's claim rests on two theories of legal malpractice. The first relates to Frost Brown's alleged failure to advise The Spring League of the notice obligations under the Policy. The second relies on a single assertion in paragraph 14 of the Complaint that Frost Brown failed to adequately investigate the ownership of the marks The Spring League sought to use.  The Spring League, however, provides no detail as to the requisite standard of care and merely states

---

[42] *Id.*

[43] Super. Ct. Civ. R. 9(g); *Horton v. Organogenesis Inc.*, 2019 WL 3284737, at *1 (Del. Ch. 2019) 2019 WL 3284737, at *4 ("At the pleadings stage, allegations regarding damages can be pled generally.") (alteration and internal quotation marks omitted)).

[44] *See Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. 2021) ("[T]he Court will dismiss if the non-movant fails to plead specific allegations supporting an element of its claim or where no reasonable, *i.e.*, unstrained, interpretation of the facts alleged reveals a remediable injury."); *Phage Diagnostics, Inc. v. Corvium, Inc.*, 2020 WL 1816192, at *9 (Del. Super. 2020) ("Where Plaintiff generally pleads damages for fraud, Plaintiff must relate its alleged injury to the misrepresentations that constitute its grounds for fraud such that the issue of damages may be inferred from the complaint."); *Wellgistics, LLC v. Welgo, Inc.*, 2024 WL 113967, at *6 (Del. Super. 2024) ("Welgo responds that Delaware only requires notice pleading and Wellgistics is on notice of Welgo's damages theory. Notice pleading, however, requires more than conclusory allegations. Here, Welgo provides no factual basis to infer that Wellgistics' use of Welgo's confidential information caused the increase in the utilization rate.").

[45] Super. Ct. Civ. R. 9(b).

[46] *Carr v. Levinson*, 1983 WL 472091, at *1 (Del. Super. 1983).

what Frost Brown did not do. In the alternative, even assuming that The Spring League can cure this pleading deficiency, it has not shown causally related damages to Frost Brown's inactions.

### A. The Spring League Has Adequately Pled that An Attorney-Client Relationship Existed.

The parties do not dispute that an attorney-client relationship existed. Though Frost Brown disputes the scope of representation, Frost Brown represented The Spring League during the negotiation of the TV Agreement, and several months after the Inquirer Story broke.[47] Indeed, Frost Brown hired an investigator after publication of the Inquirer Story.[48] The Spring League has therefore adequately pled the first element of its legal malpractice claim.

### B. The Spring League Has Not Adequately Pled Negligence.

The Spring League fails to make any allegations of the standard of care in the Complaint. In the 41-paragraph Complaint, The Spring League focuses on the alleged failures of Frost Brown to investigate the trademark history of the USFL marks and notify the Insurers of potential claims. But The Spring League does not devote a single sentence as to what constitutes the exercise of "ordinary skill and knowledge." The Spring League believes that asserting the alleged inactions of Frost Brown is sufficient to overcome a pleadings-stage challenge to the Complaint. The Court has interpreted the Complaint in the most plaintiff-friendly light. Moreover, the Court gave The Spring League's counsel an opportunity during oral argument to identify the Complaint's allegations regarding standard of care and breach. After this, the Court cannot find that the Complaint satisfactorily alleges element two of the legal malpractice count.

Even if The Spring League satisfied the second element, it has not adequately alleged causally related damages.

---

[47] MTD at 3, 6.
[48] Compl. ¶ 25.

7

**C. The Spring League Has Failed to Show Damages With Respect To the Alleged Failure to Notify the Insurer of a "Claim."**

Frost Brown argues that no Claim (defined below) existed during the time of the Policy period. As such, Frost Brown contends that The Spring League cannot show any damages as to any alleged failure to notify the Insurer of potential claims.

**1. The Court May Consider the Policy, Including Endorsements, and the Inquirer Story.**

Central to Frost Brown's argument is that the Policy expired before the August 2021 Letter, and the Inquirer Story did not constitute a Claim under the policy. If correct, The Spring League did not suffer any damages from the failure to notify the Insurer, because coverage did not ripen until a Claim existed and, once it did, the Policy had already expired.

The Court may consider the Policy, any amendments thereto, and the Inquirer Story. "Where an agreement plays a significant role in the litigation and is integral to a plaintiff's claims, it may be incorporated by reference without converting the motion to a summary judgment."[49] Accordingly, "[a] plaintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms."[50] The "'doctrine permits a court to review the actual document to ensure that the plaintiff has not misrepresented its contents and that any inference the plaintiff seeks to have drawn is a reasonable one."[51]

The Complaint refers to the Policy and the Inquirer Story. The Spring League, however, did not attach the Policy, any endorsements, or the Inquirer Story to the Complaint. Frost Brown also did not attach the Policy in the Motion to Dismiss. Frost Brown did attach correspondence

---

[49] *Furnari v. Wallpang, Inc.,* 2014 WL 1678419, at *4 (Del. Super. 2014).
[50] *Reiter on Behalf of Cap. One Fin. Corp. v. Fairbank*, 2016 WL 6081823, at *5 (Del. Ch. 2016) (quoting *Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013)).
[51] *Phoenix Mgmt. Tr. v. Win S. Credit Union*, 2019 WL 1575272, at *5 (Del. Ch. 2019) (citation omitted).

between the Insurer and The Spring League that included an endorsement to the Policy as well as other terms.

The attached Policy endorsement states that the Policy expired on June 28, 2021, which is in direct contradiction to The Spring League's assertion that the Policy expired on October 28, 2021.[52] The Complaint references that the Policy and the Policy's terms are integral to the success of The Spring League's claim. Therefore, the Court will consider the Policy endorsement and the Policy when examining the Complaint. The Court will also review the Inquirer Story.

### 2. The Inquirer Story Did Not Constitute a "Claim."

The Policy requires that the insured notify the Insurer of a "Claim" within the Policy period.[53] The Policy provides that a "Claim" is:

> a) a demand for money, services, retraction or correction including the service of a suit or institution of arbitration or mediation proceedings; or b) a threat or initiation of a suit seeking injunctive relief (meaning a temporary restraining order or a preliminary injunction) or declaratory relief[.][54]

"In construing a contract, our goal is to give effect to the intent of the parties."[55] "We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage."[56] "When the language of a contract is plain and unambiguous, binding effect should be given to its evident meaning."[57] A contract is ambiguous only if there are at least two differing, reasonable interpretations of it.[58]

---

[52] *See* MTD, Ex. 3. at 3.
[53] Compl. ¶ 20.
[54] *Id*.
[55] *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023).
[56] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citation omitted).
[57] *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).
[58] *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003).

The Inquirer Story is not a Claim. The Spring League argues that the Inquirer Story is a Claim made in the form of "a demand . . . or threat of a suit seeking injunctive relief . . . or declaratory relief."[59] A demand is "something claimed as due or owed."[60] Here, that "something" must be "money, services, retraction or correction."[61]

In itself, the Inquirer Story is not a "demand." Rather, the Inquirer Story is a news story in a city paper. The Inquirer Story reports certain statements made by a purported executive of the former USFL; however, those statements themselves do not constitute a "demand." First, those statements are speculative—the former executive states, "I want to dig into it and see who they're claiming they acquired these rights from. Because it didn't come from any legitimate source."[62] Second, the only "demand" in the Inquirer Story is a request to "sit down and talk with us."[63] That is not a demand for "money, services, retraction or correction." Much less is it a "threat of a suit."

In contrast, the August 2021 Letter contains all the hallmarks of a "Claim." It was a letter from counsel of the purported executives of the former USFL to Frost Brown; the "re" line stated it was for "Trademark Infringement/Misappropriation of Rights/Consumer Confusion;" and, the letter expressly threatened legal action."[64] While the Inquirer Story seemed to presage the August 2021 Letter, the Court looks to the face of the Inquirer Story alone and does not read future events back into the past. Applying the plain-reading interpretation of the definition of "Claim" to the facts of the case, the Inquirer Story or statements reported therein did not

---

[59] Compl. ¶ 20.
[60] *See Merriam-Webster,* https://www.merriam-webster.com/dictionary/demand.
[61] Compl. ¶ 20.
[62] MTD, Ex. 1 at 1.
[63] *Id.*
[64] Compl. ¶¶ 29-30.

constitute a "demand for money, services, retraction or correction," or the "threat . . . of a suit seeking injunctive relief . . . or declaratory relief[.]"

### 3. The Policy Expired Before a Claim Was Made.

The parties do not dispute that the Policy period was originally from October 2020 to October 2021. Frost Brown, however, claims that the Policy period was shortened to June 28, 2021, apparently due to The Spring League's failure to make premium payments. In support, Frost Brown points to the Policy endorsement.

During oral argument, counsel for The Spring League disputed that the Policy Period ended in June, stating for the first time that it did not receive notice of the cancellation. The Court finds that The Spring League has waived this argument by failing to adequately raise it in its Opposition.[65] Even if considered, The Spring League does not explain why the failure to notify an insured of the cancellation of the policy period precludes cancellation of that policy.

Instead, The Spring League argues that another policy provision extended the reporting date for 60 days, thus putting the August 2020 Letter in the coverage orbit.[66] The relevant provision, cited in the Insurer's Letter to The Spring League, states that:

> an Extended Reporting Period of 60 days following the Expiry Date as shown in the Declarations shall be automatically granted hereunder at no additional premium. *Such Extended Reporting Period shall cover claims first made against you during the period of the policy and notified to us during this 60 day Extended Reporting Period but only in respect of any act, error or omission committed prior to the Expiry Date shown in the Declarations, and subject to all other terms, conditions and exclusions of the Policy.*[67]

---

[65] *See Emerald Partners v. Berlin,* 726 A.2d 1215, 1224 (Del.1999) ("A party's failure to raise an argument in its answering brief constitutes a waiver of that argument.").
[66] Opp. at 19.
[67] MTD, Ex. 3 at 3. The italicized language, which was not in the original, represents the language The Spring League decided to omit.

As provided for in the italicized language above, the extended 60-day reporting period only covered "claims first made against you during the period of the policy."  Thus, if no one made a "Claim" against The Spring League during the period of the policy, the 60-day reporting period does not apply.  As explained above, the Inquirer Story did not constitute a "Claim," and therefore no "claims first made against you during the period of the policy" occurred for which the extended reporting period applied.

For these reasons, the Court finds that that The Spring League has not plead damages for Frost Brown's failure to advise The Spring League of the obligation to notify the Insurer of the Inquirer Story, or August 2021 Letter because no Claim was made during the coverage period.

### D. The Spring League Does Not Allege Causally Related Damages to Frost Brown's Allegedly Inadequate Investigation.

Even assuming breach of the standard of care, The Spring League does not plead any causally related damages as to its second theory—Frost Brown's alleged failure to investigate the ownership of the marks it intended to use.  The Spring League pleads that it lost coverage for the settlement amounts and attorneys' fees incurred therein as a result of Frost Brown's alleged negligence.[68]  But those damages were a result of the failure to notify of a potential claim, not any allegedly inadequate investigation that would have revealed what either The Spring League already knew, or what it was specifically insuring against.

In its Opposition, The Spring League asserts that had Frost Brown properly investigated the issue, Frost Brown would have "protected" The Spring League against future claims.[69]  The Court, however, is not required to credit conclusory allegations, and though damages may be pled generally, that does not excuse the requirement that The Spring League must demonstrate

[68] Compl. ¶ 35-36.
[69] Opp. at 20.

12

some causal nexus between the damages it seeks—here, coverage for the settlement amounts and fees' incurred therein—and Frost Brown's alleged failure to evaluate the risk of what was being insured. The Court finds that The Spring League has not pled facts raising a reasonable inference of such a causal connection.

## V. CONCLUSION

Because The Spring League has not alleged breach of the standard of care, and in the alternative, causally related damages to either of its theories, the Motion to Dismiss is **GRANTED**.

October 8, 2024
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc:     File&ServeXpress